[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEP 20, 2011
JOHN LEY
CLERK

No. 10-15278
Non-Argument Calendar

_____

Agency No. A088-080-175

AMPARO ABREU DE GERODETTI,
FABIANA GERODETTI ABREU,
FRANCO CARLO GERODETTI BONA,
ADRIAN GERODETTI ABREU,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(September 20, 2011)

Before EDMONDSON, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Amparo Abreu De Gerodetti seeks review of the Board of Immigration Appeals's ("BIA") final order affirming the Immigration Judge's ("IJ") adverse credibility determination and corresponding denial of her application for asylum under the Immigration and Nationality Act ("INA").[1] De Gerodetti, a native and citizen of Venezuela, claimed past persecution and a well-founded fear of future persecution by members of the "Bolivarian Circles" because of her participation in two signature drives leading up to a referendum to recall Venezuelan President Hugo Chavez's election. De Gerodetti's asylum application was denied based on findings that she was not credible and did not present sufficient evidence to corroborate her testimony. After review, we dismiss in part and deny in part the petition for review.

On appeal, De Gerodetti challenges the IJ's adverse credibility determination.[2] An asylum applicant must show, with specific and credible

---

[1]The IJ also denied De Gerodetti's request for withholding of removal and relief under the United Nations Convention Against Torture ("CAT"). De Gerodetti did not appeal these rulings to the BIA. Thus, we lack jurisdiction to review her claims of withholding of removal and CAT relief. See Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250-51 (11th Cir. 2006) (explaining that this Court lacks jurisdiction to review claims not exhausted before the BIA). Further, De Gerodetti did not offer argument as to these claims in this Court, thus abandoning them. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (stating that when a party fails to offer argument on an issue, that issue is abandoned). Accordingly, we dismiss De Gerodetti's withholding of removal and CAT claims.

[2]The BIA affirmed the IJ's adverse credibility determination and elaborated upon some of the IJ's reasoning. Thus, we review the IJ's adverse credibility finding as supplemented by the BIA. See Savoury v. U.S. Att'y Gen., 449 F.3d 1307, 1312 (11th Cir. 2006). Our review of

2

evidence, either past persecution or a "well-founded fear" of future persecution on a protected ground. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286-87 (11th Cir. 2005); 8 C.F.R. § 208.13(b). While credible testimony "may be sufficient to sustain the applicant's burden without corroboration," Immigration and Nationality Act ("INA") § 208(b)(1)(B)(ii), 8 U.S.C. § 1158(b)(1)(B)(ii), the weaker an applicant's testimony, the greater the need for corroboration. Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005). Conversely, an adverse credibility determination alone may support a denial of an asylum claim, but if the applicant produces evidence other than her testimony, the IJ and the BIA must consider this evidence as well. See Forgue, 401 F.3d at 1287.

In making an adverse credibility finding, the IJ must be explicit and offer "specific, cogent reasons" for the finding. Id. Pursuant to 8 U.S.C. § 1158(b)(1)(B)(iii), as amended by the REAL ID Act, the IJ, in evaluating credibility, must consider the "totality of the circumstances," including:

> demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and

---

credibility determinations is "highly deferential," and "we may not substitute our judgment for that of the Board." Mohammed v. U.S. Att'y Gen., 547 F.3d 1340, 1344 (11th Cir. 2008) (quotation marks and brackets omitted). Credibility determinations are reviewed under the substantial evidence test, and we will not overturn them unless the record compels it. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286-87 (11th Cir. 2005).

considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii); see also Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1233 (11th Cir. 2006).[3]

Additionally, "[w]here the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." INA § 208(b)(1)(B)(ii), 8 U.S.C. § 1158(b)(1)(B)(ii). "Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's credibility decision was not supported by 'specific, cogent reasons' or was not based on substantial evidence." Forgue, 401 F.3d at 1287.

De Gerodetti does not dispute that the IJ gave specific, cogent reasons for finding her not credible. De Gerodetti also does not dispute the existence of an inconsistency between her hearing testimony and other evidence in the record as to

---

[3]Because De Gerodetti filed her asylum application after May 11, 2005, the REAL ID Act's amendments apply to her case. See REAL ID Act of 2005, Pub. L. No. 109-13, § 101(h)(2), 119 Stat. 231, 305 (2005).

the date she was attacked by the Bolivarian Circles. She merely argues that this inconsistency should not have been used to discredit her testimony because "it is possible [the inconsistency] was simply a lapse of memory," and "[i]t simply appears that during testimony Petitioner got the year 2003 and 2004 confused." We conclude that the adverse credibility finding was supported by substantial evidence and that the IJ and the BIA properly relied upon the date inconsistency in evaluating De Gerodetti's credibility.

At her merits hearing, De Gerodetti repeatedly testified that she was attacked on November 28, 2004, while participating in the second signature collection drive leading up to the recall referendum. This testimony was inconsistent with: (1) the U.S. Department of State Country Reports on Human Rights Practices for Venezuela for the years 2004, 2005 and 2008 and the 2009 U.S. Department of State Background Note for Venezuela, which indicated that the second signature drive occurred several months after November 2003 (when the first signature drive ended) and August 2004 (when the recall referendum took place); and (2) De Gerodetti's asylum application and asylum interview, in which she stated that the attack during the second signature drive occurred in November 2003.

When the IJ pointed out the discrepancy to De Gerodetti and gave her an opportunity to explain it, De Gerodetti insisted that the events occurred in November 2004 and offered no further explanation. Moreover, in her appeal to the BIA, De Gerodetti continued to insist the events occurred in November 2004. Thus, Gerodetti never offered her memory lapse explanation to the IJ or the BIA.[4] In any event, a tenable explanation for an inconsistency generally does not compel reversal of the IJ's credibility finding, especially where, as here, the IJ also found a lack of corroborating evidence. See, e.g., Chen, 463 F.3d at 1233. Furthermore, to the extent De Gerodetti characterizes the inconsistency regarding the date she was attacked as minor, after the REAL ID Act, an adverse credibility determination may be based on inconsistencies that do not go "to the heart of the applicant's claim." See INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii).

In addition, the IJ and the BIA highlighted the fact that De Gerodetti failed to submit sufficient corroborating evidence. This finding is also supported by substantial evidence. The letters De Gerodetti submitted from friends and family in Venezuela: (1) were undated; (2) with one exception, were not notarized or

---

[4]Notably, De Gerodetti's newly-offered explanation that she merely confused 2003 and 2004 does not explain the inconsistency with the State Department documents. Accepting De Gerodetti's explanation, she meant to testify that she was participating in the second signature drive and attacked on November 28, 2003. However, the State Department documents indicate that the second signature drive did not begin until sometime in the beginning of 2004.

otherwise sworn; (3) lacked detail as to the authors; and (4) did not provide any specific information about the alleged incidents of harm De Gerodetti claimed to have suffered.

The vast majority of the articles and internet postings De Gerodetti submitted have no relevance to De Gerodetti's claims as their content ranges from drug trafficking and terrorism to freedom of expression and the press in Venezuela. Five documents generally concern political discrimination and Chavez's use of fear to maintain his power, including using the Bolivarian Circles, who claim to be apolitical, but reportedly were armed by President Chavez and injured demonstrators at an April 11, 2002 protest. However, none of these five documents corroborates De Gerodetti's claims that the Bolivarian Circles targeted people who participated in the two signature drives leading up to the August 2004 recall referendum.

Finally, De Gerodetti did not submit any documents corroborating her membership in either the COPEI party or Sumate or the nature of her participation with these organizations. Although De Gerodetti explained that she was unable to get documents verifying her COPEI membership because the new leadership of COPEI did not know De Gerodetti and was afraid to send verification, both the IJ and the BIA found this explanation unpersuasive.

De Gerodetti points to the 2004 Country Report, which indicates that President Chavez and officials in his administration attacked the independent media, the political opposition, labor unions, the courts, the church and human rights groups. Government supporters took these attacks as "tacit approval of violence" and threatened and physically harmed "at least dozens of individuals opposed to Chavez." Although the 2004 Country Report discusses the signature drives and recall referendum, it does not link any threats or attacks by government supporters to these events. The 2004 Country Report does not compel a conclusion that De Gerodetti's testimony was credible.

Because we conclude that the findings as to De Gerodetti's credibility and the lack of corroboration are supported by substantial evidence, we do not address De Gerodetti's argument that her testimony established past persecution or a well-founded fear of future persecution. Furthermore, De Gerodotti does not argue that other evidence in the record, absent her discredited testimony, compels a conclusion that she was persecuted or has a well-founded fear of persecution.[5]

---

[5]De Gerodetti's husband, Franco Carlo Bona De Gerodetti, and her minor son, Adrian Abreu De Gerodetti were included on De Gerodetti's asylum application as derivative beneficiaries. Although our opinion refers only to De Gerodetti, our holding as to the asylum claim applies equally to her husband and minor son. De Gerodetti's adult daughter, Fabiana Abreu De Gerodetti, was over 21 years old when De Gerodetti filed her asylum application and thus was not entitled to derivative benefits under the asylum statute. See INA § 208(b)(3), 8 U.S.C. § 1158(b)(3). Although Fabiana filed a separate asylum application, she did not appeal its denial to the BIA, and De Gerodetti's BIA brief mentioned her daughter only in passing.

**PETITION DISMISSED IN PART, DENIED IN PART.**

---

Because Fabianna did not exhaust her administrative remedies, we lack jurisdiction to review her separate asylum claim and dismiss her appeal.  See INA § 242(d)(1), 8 U.S.C. § 1252(d)(1).